# CHARLESTON.

WHITAKER-GLESSNER CO. v. CLARK.    SAME v. SAYRE et al.
(C. C. No. 313; C. C. No. 314.)

Submitted November 11, 1924, Decided January 14, 1925.

1. SPECIFIC PERFORMANCE—*Bill for Specific Performance Alleging
    that Plaintiff Gave Notice of Acceptance Held Not Demur-
    rable for Failure to Allege that Plaintiff's Attorney Was Au-
    thorized to Make Acceptance.*

    A bill in a suit for specific performance of an offer to sell a
    tract of coal, based on a written acceptance for plaintiff signed
    by its attorney, which contains an allegation that the plaintiff
    gave the notice of acceptance, is not demurrable, because it
    fails to allege that plaintiff's attorney was authorized to make
    such acceptance.    The averment that the plaintiff gave the
    notice necessarily implies that the attorney was duly author-
    ized to act for the plaintiff.    (p. 20).

    (Specific Performance, 36 Cyc. p. 774.)

2. VENDOR AND PURCHASER—*Tender of Purchase Price at Place
    Different from That Contemplated in Offer to Sell is not
    Valid Acceptance.*

    A tender to pay the purchase price at a place different from
    that contemplated in the offer to sell is not a valid acceptance
    of such offer.    (p. 24.)

    (Vendor and Purchaser, 39 Cyc. p. 1197.)

    (NOTE:    Parenthetical references by Editors, C. J.—Cyc.    Not part
    of syllabi.)

Appeal from Circuit Court, Mason County.

Actions by the Whitaker-Glessner Company against J.
Frank Clark, and by the Whitaker-Glessner Company against
Olson O. Sayre and another.    From a judgment for defendant
in each case, plaintiff appeals.

*Judgment affirmed in each case.*

*Hogg & Hogg* and *Wright Hugus,* for appellant.

*B. H. Blagg* and *Somerville & Somerville,* for appellees.

HATCHER, JUDGE:

The circuit court of Mason County sustained the separate
demurrers to the respective bills in these cases, seeking speci-
fic performance of several alleged contracts for the sale of

real estate, and certified the questions arising thereon for review.

These contracts contain like terms and provisions. The respective bills are similar in purpose and phraseology. The conclusion in each case is necessarily the same. We, therefore, need to consider the contract in one case only.

The negotiations with Sayre are based on a 'writing, which (omitting the description, mining rights, etc., immaterial in this consideration) is as follows:

"THIS CONTRACT, Made this first day of February, 1920 between O. O. Sayre and L. V. Sayre, his wife, parties of the first part, and Leighton Henry, party of the second part:

WITNESSETH: That for and in consideration of the sum of One Dollar, cash in hand paid, the parties of the first part agree and bind themselves to sell and convey, with release of dower, at any time within one year from the date hereof unto the party of the second part, his heirs and assigns, with covenants of general warranty of title, free from all encumbrance, all the coal in, on and underlying the following described land, lying in the county of Mason, on the waters of Ohio River, in the District of Graham, in the State of West Virginia:

It is understood that we are to receive $24.00 per acre for our coal and that the purchaser is to pay us for the coal and we bind ourself to pay to Leighton Henry 10% commission for his service. The commission to be added on sale price."

Nothing was done under this writing until November 29, 1920, when Leighton Henry executed to the plaintiff the following:

"I, Leighton Henry, the Agent of Olson O. Sayre under the power to sell the coal under the tract of land mentioned in the contract set out on the other side of this paper hereby sell the coal under the tract of land described in the said paper on the terms in said paper mentioned to Whitaker-Glessner Co., of Wheeling, W. Va., and it is understood that this company is to pay my commission as shown on the

other side of this paper, and I turn over this paper to the said company for them to hold and they are to pay Olson O. Sayre the price an acre that is called for in said paper and this company is to give notice to Olson O. Sayre that they have accepted the sale and I here sign this sale contract this 29th of November, 1920.

(Signed), Leighton Henry,<br>Agent for Olson O. Sayre.''

On December 28, 1920, the following notice was given to defendant Sayre from which is omitted the description of the land:

"Wheeling, W. Va., Dec. 28, 1920.

To Olson O. Sayre, Graham, W. Va.

The Whitaker-Glessner Company, the undersigned, hereby gives you notice that it is the assignee of a certain option dated the Feb. 1, 1920 given, by you to Leighton Henry, in which option you did agree to sell and convey unto Leighton Henry or his assigns, the coal underlying your premises consisting of about 166 acres, more or less.

. . . . . . . . . .

And it further gives you notice that it elects in exercise of said option to purchase said coal and hereby tenders and offers to pay the purchase price at the Merchants National Bank at Point Pleasant, W. Va., upon the delivery to said bank of good and sufficient deed for such property with a covenant of general warranty and free from all encumbrances. The Whitaker-Glessner Company reserves the right to examine said Deed and Title to said land and requests that sixty (60) days' notice of the delivery of the deed be given to this Company in order that examination of the title may be made.

WHITAKER-GLESSNER COMPANY,<br>By Wright Hugus, Attorney."

On February 1, 1921, Wright Hugus, counsel for plaintiff, wrote Sayre that if he would give Hugus ten days notice when Sayre would have the abstract and deed ready for examination Hugus would arrange to be at Point Pleasant to examine them, and, if satisfactory, to pay the purchase price; he also suggested that Sayre see Attorney Charles E.

Hogg with reference to the kind of abstract and deed to be prepared. To this letter Mr. Sayre replied:

"Graham Station, W. Va. 2/5/21.
Whitaker-Glessner Co.,
Wheeling, W. Va.,
*Attention, Attorney Wright Hugus.*
Gentlemen:

I have your letter of the first, in reply to which please note the terms of my agreement with Mr. Henry which is now in your possession expired by limitation on the 31st day of January and the Merchants National Bank of Point Pleasant, was not in a position to pay me on that date, the purchase price of my property upon delivery to them of a good deed to same.

As there is no cloud whatever on the title to my property I was in a position to give a clear deed to same, and as I did not nor do not now grant your request to allow you sixty days from date of your notice of acceptance (Dec. 28, 1920) to examine the title to my property, it is clearly evident that you have not fulfilled your part of the contract; therefore, please be advised that I will not now make you a deed to my coal land under the terms of this contract.

However, I still wish to sell the coal underlying my premises and will consider a new proposition if you so desire, which proposition I will assure you will be entirely reasonable.

I would like to see you and have a talk with you, the next time you come to Point Pleasant, and if you will advise me what date you will expect to be there I will arrange to meet you.
Yours truly,
OLSON O. SAYRE."

The later correspondence noted in the bill and briefs we do not deem material in passing upon the demurrer, as whatever rights plaintiff has were necessarily acquired prior to February 1, 1921. The owner refused to convey on the ground that there was no binding contract between him and plaintiff. That is the only important question in the case. Plaintiff framed its bill with a double aspect, setting up two

theories: (1) that Leighton Henry, by the terms of the contract, was given an option to purchase the coal, which option, the plaintiff by an assignment thereof was authorized to and did accept according to its terms; (2) or that Henry, by the terms of the contract, was made the agent of Sayre and vested with the power of sale, and that he did make a sale of the coal in question to the plaintiff. Henry treated the contract as a power to sell. The plaintiff treated it as an option to Henry duly assigned to it. If the notice given to Sayre in this case could be held to be sufficient as an acceptance of the option, it would likely serve as an acceptance under the power of sale. So no matter from which angle we view the contract, the plaintiff's right to maintain this action depends on the validity of the notice of acceptance. The first challenge thereto, questioning the authority of Mr. Hugus, as attorney, to bind the plaintiff by his signature of plaintiff's name to the notice, contends that such authority can not be presumed, and that the bill, being without allegation thereof, is therefore demurrable. This argument, however, fails upon the consideration of one of the allegations in the bill relative to this notice, which is as follows: "This plaintiff gave the following notices" etc.

Upon his demurrer the defendant admits the verity of this allegation. By reason of which admission it follows that the authority of Mr. Hugus to bind plaintiff in this matter is necessarily inferred, it having acted only through him, and special allegation of authority is not required.

"A declaration against a corporation for the publication of an alleged libel is not demurrable because it fails to aver that the agent publishing the libel acted under authority from the corporation, or within the scope of his authority, or that his act was subsequently ratified. The averment that the corporation published the libel necessarily means that the facts exist which make it responsible for the publication." *Barger* v. *Hood, et als.*, 87 W. Va. 78, 104 S. E. 280.

"The allegation that the defendant made her note, when it appears to have been in fact signed by another party, necessarily includes the allegation that such other party was duly authorized to make the note

in behalf of the defendant, and under it proof could have been given, and would be requisite, to establish that it was in fact the note of the defendant, by proving the authority of the agent to make the note in her behalf. It could not be true that she made and delivered her note, unless the agent was duly authorized to make and deliver the note in her behalf.'' *Moore* v. *McClure*, 15 N. Y. 557, 558.

A more serious contention of defendant is that even if Mr. Hugus had authority from plaintiff to give the notice of acceptance, it is nevertheless not binding on defendant because the acceptance is variant in part from the offer to sell.

No specific place being fixed in the offer of sale for payment of the purchase money, the law would imply payment to Sayre at his place of residence.

''Where no place for the payment of the purchase money is specified the vendor is entitled to have the payment made to him personally at his place of residence.'' 27 R. C. L. 443.

''In case of an offer by a person in one state to sell land in another state at a certain price, an acceptance of the offer, directing the deed to be sent to a bank in the latter state, to be delivered on payment of the purchase money does not create a binding contract, as such offer not mentioning the place of payment, entitles the vendor to payment at the place of his residence.'' *Egger* v. *Nesbit*, 122 Mo. 667, 43 A. S. R. 596; *Gilbert* v. *Baxter*, 71 Ia. 327; *Northwestern Iron Co.* v. *Meade*, 21 Wis. 480; *Weaver* v. *Burr*, 31 W. Va. 737.

Instead of offering to pay Sayre at his place of residence, the offer was to pay him at a bank at Point Pleasant. The offer of Sayre to sell his coal at a specified price, the payment whereof being fixed by law at his place of residence was not met by the plaintiff tendering payment at a bank in Point Pleasant, even though plaintiff notified Sayre that it elected to purchase his coal in the exercise of its rights under the assigned option. It is unquestioned law that in order to impose an obligation upon one offering to sell, an acceptance

must be made according to the terms of the offer.  *Allen* v. *Simmons,* 97 W. Va. 318.  If the acceptance contains any material departure from or qualification of the terms contained in the offer there is no meeting of the minds of the contracting parties, and neither is bound thereby.

A case very closely in point on this question is *Langellier* v. *Schaefer*, 36 Minn. 361, in which the court said:

"In this case the plaintiff resided in St. Paul, and the defendant at Rushmore, Nobles County, Minnesota.  The letter of April tenth, written by the latter to the former, was an offer to sell the property for $800 cash.  If, in his answer, the plaintiff had confined himself to a simple acceptance of this offer, there would have been a completed agreement, by the terms of which, in order to place the defendant in default, the plaintiff would have been required to tender the money to defendant personally at his residence in Rushmore.  But by his letter of acceptance plaintiff introduces a qualification to and a departure from the terms of the offer by fixing a different place (St. Paul) for the delivery of the deed and the payment of the money.  It is true, plaintiff commences this letter by saying that he accepts the offer, but the whole letter must be read together to get at its meaning.  He immediately proceeds to state the terms and conditions on which he accepts. We can not assent to the proposition that all of this part of the letter is to be construed, not as attaching conditions to plaintiff's acceptance, but as mere suggestions.  Some parts of the letter doubtless are merely suggestive, but that directing the deed to be sent to St. Paul to someone who would deliver it, and receive the purchase money—for defendant, was clearly intended to indicate what plaintiff *required* of defendant, and it was none the less mandatory because it was prefaced by the polite phrase of correspondence, 'please'.  That this is the construction put upon the matter by plaintiff himself is evident from his complaint.  He nowhere alleges a tender of the purchase-money to defendant personally.  In substance, all that he alleges is a refusal by defendant to execute the deed and a readiness on his own part to pay.  There having been no unconditional acceptance of defendant's

offer, there never was any completed agreement between the parties. *Maynard* v. *Tabor,* 53 Me. 511; *Northwestern Iron Co.* v. *Meade,* 21 Wis. 486.''

There having been no unconditional acceptance by the plaintiff of the several offers to sell of Sayre and Clark, the plaintiff is not in position now to demand specific performance. The judgment of the circuit court in each case is affirmed.

*Judgment affirmed in each case.*