ALMA ANDERSON ET AL., APPELLANTS, v. HALLIE STEWART, APPELLEE.

32 N. W. 2d 140

Filed April 28, 1948. No. 32329.

*Dwyer & Dwyer* and *Van Pelt, Marti & O'Gara,* for appellants.

*George B. Hastings,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and BARTOS and JACKSON, District Judges.

WENKE, J.

Appellants Alma Anderson and Clyde Anderson, who are wife and husband and who were plaintiffs below, brought this action in the district court for Cass County. The action was brought for the purpose of having the court require the appellee, Hallie Stewart, to specifically perform the terms of the contract which they allege she entered into with them. From a decree dismissing their petition, motion for new trial having been overruled, appellants appeal.

For convenience the parties will be referred to as appellants and appellee, except when it is necessary to refer to the Andersons separately when they will be referred to as either Mr. or Mrs. Anderson.

It is either admitted or the record establishes that the appellee, who is a widow and who was the defendant below, was and is the owner of the north half of Lot 15 and all of Lots 16, 17, and 18, Block 23 of Railroad Addition to the town of Imperial, Chase County, Nebraska; that on February 23, 1946, appellee entered into a lease with appellants renting to them this property for the period from March 25, 1946, to March 25, 1947; that this lease contained the following provision: "Lease subject to sale with the option to parties of the second part to purchase same;" and that this provision was understood and construed by the parties to the lease to give appellants the first opportunity to buy this property if the appellee should decide to sell during the term of the lease.

Having decided to sell, appellee, in accordance with this understanding did, on July 6, 1946, send a letter from her home at Eagle, Nebraska, to Mrs. Anderson, at Imperial, Nebraska, where the Andersons live. In this letter, insofar as it is here material, she advised Mrs. Anderson as follows: "I have had an offer of $6500 for the property where you are now living and have decided to sell. In the contract we have, is a statement that I am to give you folkes the first opportunity to buy, so what do you wish to do?"

Although there was additional correspondence between the parties in relation to this offer, however, it was not in any manner modified thereby and remained in effect until the appellee, on July 30, 1946, wrote to Mrs. Anderson advising as follows: *"I hereby withdraw my offer and the place is not for sale at any price."* This letter Mrs. Anderson received on July 31, 1946.

However, the evidence shows that on July 30, 1946, Mrs. Anderson wrote to appellee as follows: "Jess Nothnagle was over Sunday and we did not make satisfactory arrangements so we have decided to exercise our option and are enclosing deed which, when you have signed it before a Notary will you please send it to the

Farmers & Merchants bank where the $6500.00 is on deposit. Will you instruct Edgar to put on your revenue. Which will be $7.15. Do you have an abstract. So many of these older places do not and if you do not we will make one for ourselves at our own expense." This letter was mailed by Mrs. Anderson on July 31, 1946, at Imperial, Nebraska, before she received the letter of appellee dated July 30, 1946.

" 'An acceptance may be transmitted by any means which the offerer has authorized the offeree to use and, if so transmitted, is operative and completes the contract as soon as put out of the offeree's possession, without regard to whether it ever reached the offerer, unless the offer otherwise provides.' Restatement, Contracts, sec. 64." Corcoran v. Leon's, Inc., 126 Neb. 149, 252 N. W. 819.

" "The request or authorization to communicate the acceptance by mail is implied * * * where a person makes an offer to another by mail and says nothing as to how the answer shall be sent.' 13 C. J. 300." Corcoran v. Leon's, Inc., *supra.*

"Revocation of an offer may be made by a communication from the offeror received by the offeree which states or implies that the offeror no longer intends to enter into the proposed contract; if the communication is received by the offeree before he has exercised his power of creating a contract by acceptance of the offer." Restatement, Contracts, § 41, p. 49.

We find the acceptance was mailed before the letter withdrawing the offer was received and, under these principles, a contract was entered into if the acceptance was unconditional, for, as set forth in 55 Am. Jur., Vendor and Purchaser, § 16, p. 483: "The acceptance of an offer to buy or sell real estate must be an unconditional acceptance of the offer as made; otherwise no contract is formed. There must be no substantial variation between the offer and the acceptance. If the acceptance differs from the offer or is coupled with any condition that varies or adds to the offer, it is not an acceptance, but is a

counterproposition. Thus, it is held that an acceptance specifying a different place for the delivery of the conveyance or payment of the price from that stated in the offer or implied as a matter of law is not a sufficient unconditional acceptance." As stated in 66 C. J., Vendor and Purchaser, § 61, p. 523: "* * * an acceptance of an offer to sell or purchase real estate must be identical with the offer and unconditional, and so if the offeree accepts conditionally or introduces a new term or condition into the acceptance, or in any other manner makes a counteroffer, the acceptance is not effectual." See, also, Krum v. Chamberlain, 57 Neb. 220, 77 N. W. 665; Ross v. Craven, 84 Neb. 520, 121 N. W. 451; Sennett v. Melville, 85 Neb. 209, 122 N. W. 851; Smith v. Bertrand, 107 Neb. 301, 186 N. W. 83.

It will be observed that while the offer made no reference thereto, the acceptance directed the appellee to send the deed to the Farmers & Merchants Bank at Imperial, Nebraska, and that payment of the purchase price would be made there. While it might be argued that the language used in the letter of July 30, 1946, merely requested that the deed be sent to the bank at Imperial and did not require that it be done as a condition of their acceptance, however, the letter of Mrs. Anderson to appellee dated July 31, 1946, mailed immediately following receipt of appellee's letter withdrawing the offer, and her subsequent letter of August 6, 1946, clearly show that appellants did intend appellee should be required to send the deed to the bank as a requirement of their acceptance and did intend that the money should be paid there where they said it was on deposit.

We said in Lopeman v. Colburn, 82 Neb. 641, 118 N. W. 116: "In order to convert an offer into a contract to sell real estate, the vendee must accept the offer as made. Acceptance of an offer to sell land, but fixing a place other than the residence of the vendor, or the place named in the offer, for the payment of the consideration and delivery of the deed, is not an unconditional accept-

ance so as to bind the vendor." The vendor not living in Central City the court went on to say: "It is also clear that it was not the province of the vendee to compel the vendor to deliver the deed and receive the consideration in Central City."

"If no place for payment is specified in the offer, where the negotiations are carried on by correspondence, it is implied that payment is to be made to the vendor in the city where he resides." 66 C. J., Vendor and Purchaser, § 61, p. 525, note 23b.

"If no place for delivery is specified (1) the vendor is entitled to have the transaction closed where he lives." 66 C. J., Vendor and Purchaser, § 61, p. 525, note 24a.

We think what was said in Beiseker v. Amberson, 17 N. D. 215, 116 N. W. 94, is applicable and controlling here. It was therein stated:

"In this case there was an unqualified acceptance of the offer so far as the price is concerned. After that the acceptance advances terms by the writer as to the carrying out and execution of the contract that were in no manner contained in the offer. Among the new terms imposed by the plaintiff was the one asking the defendant to send the deed to one of two banks named in the letter. The defendant was entitled as a matter of law to have the cash price paid to him at Snohomish, Wash., where the offer was made; and without his consent he was not compelled to send the deed to any place or bank until the price was paid. If plaintiff had accepted the offer unconditionally, his right to a deed could have been made effectual only by a tender of the price to the defendant personally; and, by requiring defendant to send the deed elsewhere, a condition was attached to the acceptance which the defendant was not under any legal obligation to comply with.

"The appellant contends that there is an unqualified acceptance contained in defendant's letter, and that what is thereafter contained in the letter is offered as a suggestion merely for the most convenient way of completing

the transaction. We think that the letter is not susceptible of that construction. At what place the price was to be paid was a part of the offer. The defendant was entitled to have the price paid to him simultaneously with the delivery of the deed, and he was not obligated to go to any bank for payment nor to communicate a deal with the bank before the price was paid. The following authorities fully sustain these principles: Harris Bros. v. Reynolds (N. D.) 114 N. W. 369; Gilbert v. Baxter, 71 Iowa, 327, 32 N. W. 364; N. W. Iron Co. v. Meade, 21 Wis. 480, 94 Am. Dec. 557; Batie v. Allison, 77 Iowa, 313, 42 N. W. 306; Wristen v. Bowles, 82 Cal. 84, 22 Pac. 1136; Weaver v. Burr, 31 W. Va. 736, 8 S. E. 743, 3 L. R. A. 94; Baker v. Holt, 56 Wis. 100, 14 N. W. 8; Wilkin Mfg. Co. v. H. M. Loud & Sons L. Co., 94 Mich. 158, 53 N. W. 1045; Nat. Bank v. Hall, 101 U. S. 43, 25 L. Ed. 822; Russell v. Falls Mfg. Co., 106 Wis. 329, 82 N. W. 134; Langellier v. Schaefer, 36 Minn. 361, 31 N. W. 690."

To the same effect is the holding in Rahm v. Cummings, 131 Minn. 141, 155 N. W. 201. Therein it was held: "Where an offer of sale of real estate specifies no place where papers shall be passed and consideration paid, it is implied that this shall take place at the residence of the vendor. Where the acceptance of the offer is coupled with a condition that the deed be sent to a designated bank at a place other than the vendor's residence, and that collection of the consideration be made through the agency of such bank, it imposes conditions not contained in the offer, and is in effect not an acceptance of the offer but a rejection of it." The court, in the opinion, goes on to state that: "The telegram and letter to defendant purporting to accept her offer directed her to 'send deed in blank to Merchants National Bank for collection.' We cannot regard this as a mere suggestion. It was a direction and it imposed new conditions not found in the terms of the offer. It required the transaction to be closed at Detroit, Minnesota, and it named the agent whom defendant should entrust with

the collection of the purchase price. Both of these were conditions which could not be imposed on defendant without her consent, and she did not consent. Unless otherwise agreed, defendant was entitled to have the transaction closed where she lived. Langellier v. Schaefer, 36 Minn. 361, 31 N. W. 690; Couch v. McCoy, 138 Fed. 696, 702; Sawyer v. Brossart, 67 Iowa, 678, 25 N. W. 876, 56 Am. St. 371; Knox v. McMurray, 159 Iowa, 171, 140 N. W. 652; De Jonge v. Hunt, 103 Mich. 94, 61 N. W. 341; Egger v. Nesbitt, 122 Mo. 667, 27 S. W. 385, 43 Am. St. 596; Beiseker v. Amberson, 17 N. D. 215, 218, 116 N. W. 94; Baker v. Holt, 56 Wis. 100, 103, 14 N. W. 8. She did not live in Detroit. If she saw fit to entrust the collection of her money to an agent she had the right to herself designate the agent. The other party to the contract could not require her to take an agent of his choosing, no matter how responsible that agent might be. The acceptance of an offer, in order to constitute the completion of a contract, must be unqualified. The answer to defendant's offer was not unqualified, but conditional. It was not, therefore, an acceptance of the offer, but was in effect a rejection of it. Lewis v. Johnson, 123 Minn. 409, 143 N. W. 1127, L. R. A. 1915 D, 150, and cases cited."

For additional cases involving the same questions and holding to the same effect see Cram v. Long, 154 Wis. 13, 142 N. W. 267; Arnett v. Tuller, 134 Ga. 609, 68 S. E. 330; Hinish v. Oliver, 66 Kan. 282, 71 P. 520; Sharp v. West, 150 F. 458; Robinson v. Weller, 81 Ga. 704, 8 S. E. 447; Greenawalt v. Este, 40 Kan. 418, 19 P. 803; Hall v. Jones, 164 N. C. 199, 80 S. E. 228; Whitaker-Glessner Co. v. Clark, 98 W. Va. 19, 126 S. E. 340.

Appellants cite cases of this and other jurisdictions wherein courts granted relief, either in the form of damages or specific performance, under comparable provisions when the owners of the property had sold and conveyed it to others without giving the owners of the option privilege the opportunity to exercise their

right to purchase thereunder. See Harper v. Runner, 85 Neb. 343, 123 N. W. 313; Cummings v. Nielson, 42 Utah 157, 129 P. 619; Pearson v. Horne, 139 Ga. 453, 77 S. E. 387; Hayes v. O'Brien, 149 Ill. 403, 37 N. E. 73; Driebe v. Fort Penn Realty Co., 331 Pa. 314, 200 A. 62, 117 A. L. R. 1091. Those cases are correct under the situation as therein set forth. Therein the owners had breached the provisions giving the option by selling their property to others without giving the optionees the opportunity to buy if they so desired and, by such sale, established the owners' willingness to sell together with the terms and conditions of the sale. Such cases are not applicable here for the reason that the owner has neither sold nor conveyed the property to another but is still the owner thereof.

Here the appellants had no right to purchase under their agreement unless, during the term of their lease, the owner should decide to sell. Having decided to do so appellee was under legal obligation to offer the property to the appellants and give them a reasonable time to either accept or reject her offer before selling to another on the same terms. Appellee gave the appellants the benefit of this provision by offering the property to them. This offer she was under no obligation to keep open for any definite length of time but could withdraw at any time she desired provided it had not been unconditionally accepted. This she did. Under these circumstances she would be required to give the appellants the same opportunity to buy should she again decide to sell the property during the term of the lease. Nevertheless, she was not obligated to keep the offer made open for the term thereof. The appellants not having unconditionally accepted the offer before it was withdrawn cannot, in the absence thereof, have it enforced and, in the absence of any evidence to show that the appellee has sold or conveyed the property to another during the term of the lease, are not in position to complain. See, 58 C. J., Specific Performance,

§ 159, p. 974; 66 C. J., Vendor and Purchaser, § 22, p. 497; Whitaker-Glessner Co. v. Clark, *supra*; Cummings v. Nielson, *supra*; Pearson v. Horne, *supra*; Hayes v. O'Brien, *supra*; Driebe v. Fort Penn Realty Co., *supra*.

While cases are cited which hold contrary to the principles herein announced they are few in number and do not, in our judgment, represent a sound rule for the reason that owners of property have the absolute right to make the terms and conditions upon which they are willing to sell their property and any offer to do so must be unconditionally accepted if the owner is to be bound thereby. Courts should not qualify this right. See, Whelchel v. Waters, 152 Ga. 614, 111 S. E. 25; Curtis Land & Loan Co. v. Interior Land Co., 137 Wis. 341, 118 N. W. 853.

We have come to the conclusion that the decree of the trial court is correct and it is therefore affirmed.

AFFIRMED.